IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

TERRI LYNN JOHNSON,

    Plaintiff,

v.

    CIVIL ACTION NO.: 5:19CV140
    (BAILEY)

ANDREW M. SAUL,
COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

# REPORT AND RECOMMENDATION

## I. Introduction

This case arises from the denial of Plaintiff, Terri Lynn Johnson's ("Plaintiff") application for Social Security Disability ("SSI") and Social Security Disability Insurance Benefits ("SSDI"). After Plaintiff's application proceeded through the administrative process, United States Administrative Law Judge, Brian Crockett ("ALJ"), concluded that Plaintiff was not disabled within the meaning of the Social Security Act. Plaintiff's request for review by Appeals Council was denied, making the ALJ's decision the final decision of Defendant. Plaintiff seeks judicial review of Defendant's decision.

The undersigned has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented. Accordingly, the decisional process would not be significantly aided by oral argument. Therefore, the recommendations of the undersigned are set forth below.

## II. Factual/Procedural History

Plaintiff filed her application on or about October 26, 2015 alleging a disability commencing on or about the same date. R. 340, 457-58. Her claim was denied initially and upon reconsideration. R. 373-77; 381-83. Thereafter, Plaintiff requested a hearing with an ALJ. An Administrative Hearing was held on April 2, 2018, in Cumberland, MD. Larry Ostrowski, Ph.D., vocational expert, also appeared at the hearing. R. 69-84. On May 8, 2018, the ALJ issued a decision that Plaintiff had not been under a disability within the meaning of the Social Security Act from October 26, 2015, through the date of the ALJ's decision. R. 69-84. On February 3, 2019, the Appeals Council concluded that there was no basis for granting Plaintiff's Request for Review. R. 1-6.

Plaintiff filed the instant Complaint on or about April 2, 2019. ECF No.1. Defendant filed his Answer on or about June 12, 2019. ECF No. 8. On the same date, Defendant filed a certified copy of the Social Security Administrative Record. ECF No. 9. On September 20, 2019, Plaintiff filed her Motion for Summary Judgment and Memorandum in Support.[1] ECF No. 16 and 16-1. Defendant filed his Motion for Summary Judgment and Memorandum in Support on November 13, 2019.[2] ECF Nos. 19 & 20.

According to her brief, Plaintiff claims that the following medical conditions render her disabled pursuant to the Social Security Act: Fibromyalgia, Lupus, Reynaud's Disease/Syndrome, lumbar radiculopathy with back pain, degenerative disc disease of the lumbar spine, and restless leg syndrome. ECF No. 16-1 at p. 2-3.

---

[1] The deadline to file Plaintiff's Motion was extended twice upon Motion by Plaintiff.
[2] The deadline to file Defendant's Motion was extended upon Motion by Defendant.

2

## III. ALJ Decision

### A. The Five-Step Evaluation Process

In determining whether Plaintiff is disabled, the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520. The first step in the process is to determine whether a claimant is currently engaged in substantial gainful activity. § 404.1520(b). If the claimant is not engaging in substantial gainful activity, then the second step requires the ALJ to determine whether the claimant has a medically determinable impairment that is severe or a combination of impairments that are severe. § 404.1520(c). If the claimant has a severe impairment or combination of impairments, then the analysis moves to the third step in the sequence, which requires the ALJ to determine whether the claimant's impairments or combination of impairments meets or equals any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). § 404.1520(d). If impairment meets or equals a listed impairment, the claimant is disabled. *Id.* However, if the impairment does not meet or equal a listed impairment, the ALJ must determine the claimant's residual functional capacity (hereinafter "RFC"), which is the claimant's ability to do physical and mental work activities on a sustained basis despite the limitations of his impairments. § 404.1520(e). After determining the claimant's RFC, the ALJ must determine, at step four, whether the claimant has the RFC to perform the requirements of his past relevant work. § 404.1520(f). If the claimant does not have the RFC to do his past relevant work, then he has established a *prima facie* case of disability, and the burden shifts to the Commissioner to demonstrate, at the final step in the process, that other work exists in significant numbers in the national economy that the claimant can do, given the claimant's age, education, and work experiences. § 404.1520(g); *see also McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983).

**B. ALJ Findings**

The ALJ's findings are set forth in his decision dated May 8, 2018, which provides as follows: Plaintiff meets or exceeds the insured status requirements of the Social Security Act through December 31, 2020; Plaintiff has not engaged in substantial gainful activity since October 26, 2015, the alleged disability onset date; Plaintiff suffers from the following, severe impairments: (1) Fibromyalgia, (2) Lupus, (3) Reynaud's Disease/Syndrome, (4) lumbar radiculopathy with back pain, (5) degenerative disc disease of the lumbar spine, and (6) restless leg syndrome. R.72.

The ALJ further found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526), and that Plaintiff has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) with the following limitations:

> All postural movements are occasionally, except for no climbing of ladder/ropes/scaffolds; avoidance of concentrated exposure to pulmonary irritants, extreme heat, and humidity; no more than frequent reaching, handling, and fingering bilaterally; limited to simple, routine, and repetitive tasks that are low-stressed in nature, which are defined as having only occasional decision making, occasional changes in the work setting, and no strict production quotas; and a sit/stand option, which would allow the individual to briefly, up to 2 minutes, alternate between the sitting or standing position, at 30 minute intervals throughout the workday, without breaking the task at hand.

R. 74. The ALJ concluded that Plaintiff is unable to perform any past relevant work. Nevertheless, considering Plaintiff's age, education, work experience, and residual functional capacity, the ALJ concluded that jobs exist in significant numbers in the national economy that Plaintiff can perform, including Call Out Operator (DOT 237.367-014); Charge Account Clerk (DOT 205.367-014); and Document Preparer (DOT 249.587-018). R. 83. The ALJ therefore

concluded that Plaintiff was not under a disability from October 26, 2015, through the date of the decision within the meaning of the Social Security Act. R. 84.

## IV. Motions for Summary Judgment

### A. The Standards

#### 1. Summary Judgment

Summary Judgment is appropriate if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The party seeking summary judgment bears the initial burden of showing the absence of any issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). All inferences must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, "a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but…must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

#### 2. Judicial Review

This Court's review of the ALJ's decision is limited to determining whether the decision is supported by "substantial evidence." 42 U.S.C. § § 405(g), 1383(c)(3). "Substantial evidence" is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). "Substantial evidence" is not a "large or considerable amount of evidence, but rather, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 664-65 (1988) (internal citations and quotations omitted). The decision before the

Court is "not whether the Claimant is disabled, but whether the ALJ's finding of no disability is supported by substantial evidence." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (internal citations and quotations omitted). The ALJ's decision must be upheld if it is supported by "substantial evidence." 42 U.S.C. § § 405(g), 1383(c)(3). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence'." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966), *overruled by implication on other grounds* by *Black and Decker Disability Plan v. Nord*, 538 U.S. 822 (2003).

With these understandings, we turn to the arguments raised on appeal.

**B.    Arguments of the Parties**

**1.    Plaintiff's Arguments**

Plaintiff makes three arguments on appeal: (1) that the ALJ failed to follow the treating physician rule with respect to Dr. Don Martin and Dr. Laura Nulph; (2) the ALJ ignored the vocational expert's testimony concerning restrictions which would remove Plaintiff from any work force; (3) the ALJ's opinion is not supported by substantial evidence. ECF No. 16-1.

**2.    Defendant's Arguments**

In response, Defendant contends that: (1) the ALJ provided sound reasons for giving only partial weight to Dr. Martin's Questionnaire and Plaintiff's treating source opinions; (2) the ALJ credited the vocational expert's testimony that contained the limitations incorporated within the ALJ's RFC; and (3) substantial evidence supports the ALJ's conclusion that Plaintiff retained the capacity to perform a range of sedentary work. ECF No. 20.

C.  **Discussion**

1.  **Treating Physician Rule - Generally**

Plaintiff first argues that the ALJ erred when he disregarded Dr. Martin's and Dr. Nulph's opinions because such disregard constitutes a violation of the treating physician rule. According to Plaintiff, the treating physician rule states that a treating physician's opinion can only be disregarded if there exists in the record persuasive contradictory evidence. Plaintiff cites *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001) and *Bryant v. Shalala*, 882 F.Supp. 544, 547-49 (S.D.W.Va. 1995) in support of this argument. Plaintiff's assertions with respect to the applicable law do not accurately reflect the law regarding the weight assigned to treating physicians' opinions, however. Rather, Plaintiff appears to have oversimplified the aforementioned case and statutory law.

Pursuant to 20 C.F.R. § 404.1527(c)(2), ALJs should give more weight to medical opinions from treating sources, generally, since those sources are likely to be the "medical professionals most able to provide a detailed, longitudinal picture of [a plaintiff's] medical impairment(s)." If an ALJ finds that "a treating source's medical opinion on the issue(s) of the nature and severity of [the] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record," then the opinion will be given controlling weight. In other words, "[a]lthough the treating physician rule generally requires a court to accord greater weight to the testimony of a treating physician, the rule does not require that the testimony be given controlling weight." *Mastro v. Apfel*, 270 F.3d 171, 178. "Thus, by negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Id.* at 178 (internal citations and quotations

7

omitted). "Under such circumstances, the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." *Id.* (internal citations and quotations omitted).

Stated a different way, while an ALJ is generally required to give greater weight to a treating physician's testimony, an ALJ is <u>not</u> required to give a treating physician's opinions controlling weight simply because they are a treating physician. Notwithstanding this general rule, if an ALJ finds that a treating physician's opinions are inconsistent with other substantial evidence, then that treating physician's opinions should be given significantly less weight. *See* 20 C.F.R. § 404.1527(c)(2) and *Mastro*, 270 F.3d at 178.

Contrary to Plaintiff's assertions, the ALJ did not 'disregard' the opinions of Plaintiff's treating providers. Rather, and in accordance with the aforementioned case law, the ALJ determined that the opinions of Plaintiff's treating physicians should only be assigned partial weight. For the reasons that follow, the undersigned agrees with the ALJ's assessment.

    a. **Dr. Martin**

Dr. Donald Martin, M.D., is Plaintiff's treating rheumatologist. At issue are the opinions that Dr. Martin set forth in his Lupus (SLE) Medical Source Statement; specifically, the following: that Plaintiff is moderately limited in her ability to perform activities of daily living, and in her social functioning, concentration, and persistence or pace; that Plaintiff can stand for no more than thirty (30) minutes at a time, can stand/walk for less than two (2) hours in an eight (8) hour workday, and can only sit for about four (4) hours in an eight (8) hour workday; that Plaintiff would need unscheduled work breaks lasting for 5-10 minutes every 60 to 90 minute period; that Plaintiff could not work at a sedentary exertional level because of exertional, postural, and manipulative limitations; and, that Plaintiff would be off task for approximately

8

25% or more of the time and miss more than four (4) days of work per month. R. 787-791. After reviewing the medical evidence of record, the undersigned would conclude that the ALJ did not err when he assigned only partial weight to these opinions because the medical evidence of record, and specifically the records from Plaintiff's treatment with Dr. Martin, do not support the aforementioned opinions.

The medical evidence of record shows that Plaintiff treated with Dr. Martin approximately six (6) times between October 2015 and February 2017[3] for the following diagnoses, among others[4]: Fibromyalgia, Lupus, and Reynaud's disease. During these visits, Plaintiff's complaints included left para-vertebral back pain due to a kidney stone, cognitive fog, fatigue, and intermittent symptoms consistent with Fibromyalgia and Raynaud's Syndrome. During Plaintiff's physical examinations, tender/trigger points at 18/18 were consistently noted. However, Plaintiff's physical examinations also consistently revealed that she was in no acute distress. There was no axial midline or SI joint tenderness. Straight leg raising test was normal. Tinel's sign was consistently negative bilaterally, her straight leg raising test was consistently normal, her balance and gait were consistently normal, and her sensory and motor examinations were consistently normal. Throughout treatment, Dr. Martin recommended that Plaintiff gradually increase her exercise program. R. 723-730; 771-786; 870-877; 884-890; 892-898; 900-908. Clearly, nothing in the aforementioned records suggests a disabling condition(s) such as the one(s) Dr. Martin outlined in his Medical Source Statement. Additionally, the undersigned would note that there is nothing else within the medical records of evidence which supports Dr. Martin's opinions set forth in his (SLE) Medical Source Statement.

---

[3] Dr. Martin's Medical Source Statement (R. 787-791) states that he first began treating Plaintiff in October 2008. However, records from before October 2015 do not appear to be included within the medical evidence of record.
[4] These other diagnoses do not include lumbar radiculopathy, degenerative disc disease, or restless leg syndrome.

9

In light of the medical records in evidence with respect to Plaintiff's treatment with Dr. Martin, including contradictory evidence in the form of Dr. Martin's own physical examinations of Plaintiff, and in light of the relevant case and statutory law, the undersigned is satisfied that the ALJ did not err when he accorded only partial weight to Dr. Martin's opinions. The undersigned is further satisfied that substantial evidence supports the ALJ's determination that Dr. Martin's opinion should only be accorded partial weight. In so finding, the undersigned notes that, in his opinion, the ALJ discussed the persuasive contradictory evidence contained within the record, particularly Dr. Martin's own medical opinions and observations as recorded in his medical records from his visits with Plaintiff. R. 82.

### b. Dr. Nulph

Plaintiff also argues that the ALJ erred when he concluded that Dr. Nulph's functional assessment should only receive partial weight. For the reasons that follow, the undersigned is satisfied that the ALJ did not err when he made this finding.

Dr. Laura Nulph is Plaintiff's primary care physician. At issue specifically are Dr. Nulph's opinions that Plaintiff would experience pain or other symptoms severe enough to interfere with attention and concentration constantly during a typical work day; that Plaintiff would be capable of low stress jobs, but only if Plaintiff's physical symptoms would allow; that Plaintiff could sit or stand for only approximately 30 minutes at a time; that in a total 8 hour work day, Plaintiff could only sit and stand or walk for less than 2 hours; that Plaintiff would be required to walk every 30 minutes during the work day and would have to do so for approximately 10 minutes at a time; and that Plaintiff would need a position that would allow her to shift positions at will and would permit her to take unscheduled breaks during the day. Dr. Nulph felt that Plaintiff was capable of lifting less than 10-20 pounds only occasionally. She

could never twist, stoop, crouch/squat, climb ladders, climb stairs and has "significant limitations" reaching, handling or fingering. Dr. Nulph further opined that Plaintiff would likely be off from work more than 4 days per month as a result of her health conditions, which included Lupus, Fibromyalgia, and degenerative disc disease. R. 963-966.

The medical evidence of record reveals that Plaintiff treated at Pendleton Community Care where Dr. Nulph is a physician between approximately November 2010 and March 2018. During this time, Plaintiff treated not only with Dr. Nulph, but with other practitioners, including Dr. Carmen Rexrode, Dr. John Seegar, Dr. Samuel Showalter, Devon Somerville, P.A., Mary Bland, N.P., and Kimberly Moyers, N.P. In fact, the records suggest that Plaintiff treated primarily with Dr. Carmen Rexrode (and not Dr. Nulph) during this time. Plaintiff received treatment for general health issues, including (mostly) upper respiratory infections, urinary tract infections, acute injuries and general aches and pains. It does not appear as though Plaintiff received treatment for her Lupus, Fibromyalgia, or her degenerative disc disease at Pendleton Community Care. R. 579-722; 792-816; and 2011-2052.

Plaintiff treated with Dr. Nulph only a handful of times between November 2010 and March 2018 and said treatment Plaintiff did not include treatment for musculoskeletal complaints. Rather, and as stated above, she received treatment for routine medical conditions such as upper respiratory infections and urinary tract infections. Dr. Nulph conducted physical examinations of Plaintiff at each appointment, and these examinations generated the following impressions: Plaintiff displayed normal motor strength and tone, normal movement of all extremities, no muscle aches (unless associated with a cold or upper respiratory infection), no muscle weakness, no arthralgias, no joint pain, and no swelling in the extremities. R. 579-722; 792-816; and 2011-2052. Given the limited basis upon which Dr. Nulph actually treated

Plaintiff, in light of the conditions treated (i.e. routine medical conditions as opposed to the conditions which Plaintiff claims have disabled her), and based upon Dr. Nulph's observations and diagnoses of this Plaintiff, it is difficult to see how Dr. Nulph came to the conclusions set forth in her functional assessment. Accordingly, the undersigned would conclude that the ALJ did not err in assigning Dr. Nulph's expert opinion only partial weight. Further, the undersigned is satisfied substantial evidence exists in the record to support the ALJ's finding that Dr. Nulph's expert report should receive only partial weight. R. 81-82.

In so deciding, the undersigned notes that a review of the ALJ's opinion makes clear that the ALJ discussed the persuasive evidence contrary to the treating source opinion, i.e. the results of Dr. Nulph's own physical examinations of Plaintiff. Further, the ALJ provided specific and legitimate reasons for giving Dr. Nulph's opinion only partial weight, and those reasons included the contradiction between Dr. Nulph's expert opinion, and her own physical and medical observations of Plaintiff as recorded within the medical evidence of record.

    2.    **Vocational Expert's Testimony**

Plaintiff also contends that the ALJ erred when he determined that Plaintiff could perform sedentary work notwithstanding the vocational expert's testimony that Plaintiff would be unable to maintain substantial gainful activity if she "only occasionally handles and [sic] finger bilaterally". ECF No. 16-1 at p. 9. This argument is not persuasive.

The testimony to which Plaintiff refers is testimony provided in response to a hypothetical posed by the ALJ. However, "[b]y presenting a hypothetical, the ALJ [does not make] findings of fact." *Davis v. Apfel*, 162 F.3d 1154, 1998 WL 559728, at *2 (4th Cir. 1998) (table). Indeed, the ALJ did <u>not</u> conclude that Plaintiff was limited to only "occasional" reaching, handling, and fingering bilaterally. Rather, and according to the RFC assessment, the

ALJ found that Plaintiff is limited to "frequent reaching, handling, and fingering bilaterally." R.74 (emphasis added). Therefore, the vocational expert's testimony with respect to Plaintiff's employment prospects if limited to only "occasional" reaching…etc. is of no moment.

### 3. Substantial Evidence

A review of the medical evidence of record and the testimony presented during the hearing of April 2, 2018, demonstrates that substantial evidence exists in the record to support the ALJ's determination that Plaintiff is not disabled within the meaning of the Social Security Act and that she is capable of performing light or sedentary work. As was discussed above, Plaintiff's treating physicians' opinions were rightfully assigned only partial weight. Further, the medical evidence of record demonstrates that Plaintiff was not in acute distress at any of the appointments documented; she displayed essentially normal physical examinations at her appointments; and her Lupus and Raynaud's syndrome were consistently found to be mildly active and uncomplicated (respectively). Plaintiff's neurological examinations were consistently found to be within normal limits. Finally, and perhaps most tellingly, Plaintiff's treating rheumatologist actually encouraged Plaintiff to increase her aerobic exercise regimen. Such evidence supports the ALJ's conclusion that Plaintiff is capable of performing sedentary work. Substantial evidence therefore exists to support the ALJ's findings.

## V. Recommendation

Accordingly, and for all of the foregoing reasons, the undersigned **RECOMMENDS** that that Plaintiff's Motion [16] for Summary Judgment be **DENIED** and Defendant's Motion [19] for Summary Judgment be **GRANTED**.

Any party who appears *pro* se and any counsel of record, as applicable, may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection.

A copy of such objections should be submitted to the District Judge of Record. **Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation.** *See* 28 U.S.C. § 636(b)(1); *Wright v. Collins*, 766 F.2d 841, 845-48 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984); *see also Thomas v. Arn*, 474 U.S. 140, 155 (1985).

The Court **DIRECTS** the Clerk of the Court to provide a copy of this Report and Recommendation to all counsel of record, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia. The Court further **DIRECTS** the Clerk to mail a copy of this Report and Recommendation to any pro se party by certified mail, return receipt requested, to their last known address as reflected on the docket sheet.

Respectfully submitted this 27th day of February 2020.

JAMES P. MAZZONE
UNITED STATES MAGISTRATE JUDGE